UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

| | |
|---|---|
| Carolyn Sue Griffith, | ) |
| | ) |
| *Plaintiff;* | ) |
| | ) |
| v. | ) No. 7:16-cv-00101-DCR |
| | ) |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL SECURITY | ) |
| *Defendant.* | ) |
| | ) |

## RESPONSE TO COMMISSIONER'S MOTION TO DISMISS

### FACTS AND BACKGROUND

As a threshold matter, as the Court is well aware, when considering the facts relevant to a motion to dismiss, the Court and the parties must be careful to limit their analysis to the Complaint's well-pled facts and only such other documents as are incorporated into the Complaint or publicly available and proper for judicial notice. *See Nevada-Martinez v. Amhad*, No. 5:15-cv-239-JMH, 2016 WL 1559426, at *2 (E.D. Ky. April 15, 2016)

Ms.. Griffith mentions this because the Defendant has attached documents to her Motion to Dismiss that should not be considered. In specific, Ms. Griffith objects to consideration at the motion-to-dismiss phase of:

- the Declaration of Dreega Mosby
- the May 12, 2015 Memorandum from David F. Black to Helen L. Cooper

Neither of these documents is referred to, much less incorporated into, Ms. Griffith's Complaint. Accordingly, they must be ignored.

1

As a result, the Defendant's summary of facts must be scrutinized carefully to ensure that the Court does not inadvertently consider facts that it should not at this phase of the case. For example, on the last paragraph of page 4 (and carrying over to page 5) of the Memorandum in Support of Acting Commissioner's Motion to Dismiss, the Defendant refers to facts related to the May 12, 2015 Memorandum by relying on the Dreega Declaration and the Memorandum. Such factual representations must be disregarded.

As the Complaint provides, Carolyn Sye Griffith is a disabled individual from Pike County, Kentucky.

On July 31, 2008, an ALJ with Social Security Administration approved Ms.. Griffith's claim for benefits under Title XVI (Supplemental Scurity Income ("SSI") of the Social Security Act.

More than seven years later, the Social Security Administration's Appeals Council wrote to Ms.. Griffith and provided her with a notice that alleged that the Social Security Administration's Office of the Inspector General said that it has reason to believe fraud was involved in cases like Ms. Griffith's in which Attorney Eric C. Conn submitted evidence by four named doctors, including Dr. Brad Adkins,Ph.D..

As a result of this notice, and without a complete record, Ms. Griffith had to undergo a "redetermination" hearing to determine whether a new ALJ would find that the evidence (not considering Dr. Adkins' report) was sufficient to prove that Ms. Griffith was disabled on February 6, 2008. As noted in our Memorandum for Preliminary Injunction, the new presiding ALJ employed a hearing procedure which the Commissioner promptly rescinded after the denial decision of 2/22/2016 was issued.

The actions of the Defendant are premised on the unproven allegation, that there was fraud or similar fault. There is no evidence of record in the administrative proceeding that supports such a finding.

2

The ALJ who presided at the redetermination hearing denied Ms. Griffith's claim, finding that when Dr. Adkins exam report is ignored, that there was not sufficient evidence to support Ms. Griffith's disability as of July 31, 2008.

Ms. Griffith appealed her decision to the Appeals Council, which summarily denied review on March 21, 2016.

Having exhausted his administrative remedies, Mr. Mullins filed the present appeal to this Court.

On August 8, 2016 the Defendant filed a Rule 12(b)(6) motion to dismiss. The Defendant essentially seeks dismissal of Ms. Griffith's procedural challenges. (The Defendant refers to these as "Counts Four and Five" although Ms. Griffith did not designate them so.)

Although it should not make a formal difference for the Court's consideration of the Defendant's Motion to Dismiss, Ms. Griffith notes that on August 22, 2016,s he filed a Motion for Preliminary Injunction to enjoin the Defendant to reinstate her benefits while the merits of his procedural challenge receive full consideration. While there is overlap between the relevant facts for the Motion to Dismiss and the Motion for Preliminary Injunction, there are some facts that can be considered for the Motion for Preliminary Injunction that should not be considered for the Motion to Dismiss. In addition, the legal standards are considerably different. Accordingly, the two motions shouldt be analyzed distinctly.

## ARGUMENT

A court evaluating a Rule 12(b)(6) motion to dismiss determines whether the complaint, construed in the light most favorable to the plaintiff, contains sufficient factual matter to state a plausible claim. *See Jackson v. Sedgwick Claims Mgmt. Servs.*, 731 F.3d 556 (6th Cir. 2013) (en banc). Determining plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). *Iqbal* expressly disavows a return to the days of code-pleading and instructs courts to make "reasonable inference[s]" based upon the well-pled facts. *Id.* at 678.

Here, Defendant moves to dismiss Ms. Griifth's procedural challenges because it claims that it properly re-determined Ms. Griffith's application for SSI benefits in accordance with section 205(u) of the Social Security Act, and the Act's regulations governing re-openings are not applicable to redeterminations. As noted in the Motion for Preliminary Injunction, Plaintiff believes that since the Commissioner failed to provide a full and complete record of the 2008 claims file, that it basis for redetermining Ms. Griffith's claim is estopped. See Island Creek Coal Company v. Holdman, 202 F. 3d 873, 883-884 (6th Cir. 2000). As the Sixth Circuit noted, "Failure to provide a complete and accurate record would constitute a due process violation against [Ms. Griifth's] interest caused by the Commissioner which would defeat any attempt to redetermine Ms. Griffith's eligibility for SSI benefits based on alleged fraud or similar fault. A compromised or incomplete administrative record makes it legally untenable to claim it can revisit or redetermine after the original favorable decision Second, as was noted in our Preliminary Injunction, the new ALJ employed a hearing procedure under Social Security ruling 00-2p which was rescinded shortly after the 2/22/2016 denial, specifically on 3/14/2016.

4

Third, the Defendant points to legislative history of the Act to argue that Congress intended there to be a distinction between redeterminations and re-openings. *Id.* at 7-8 (citing Report on Reforms to Address Supplemental Security Income Fraud and Abuse Involving Middlemen at 7 (May 12, 1994), http://congressional.proquest.com/congressional/docview/t21.d22.cmp-1994-wam-0010?accountid=14740 [hereinafter Rept. on Reforms]). However, the report that Defendant relies upon in fact demonstrates that Congress intended reopening procedures to apply when there is reason to believe that an application or supporting documents are fraudulent. In the report, the Subcommittee on Oversight of the House Committee on Ways and Means states:

> The Social Security Act should be amended to require that the HHS OIG make SSI 'recipient identifying information' available to SSA as soon as it is known and **to require that SSA immediately proceed administratively to reopen** SSI cases where there is reason to believe that an application or supporting documents are fraudulent, unless it is determined . . . that making the identifying information available to SSA or **proceeding with administrative reopening** of those cases, would substantially jeopardize the criminal prosecution of one or more of the parties involved in the related fraudulent scheme.
>
> *4. Reopening SSI cases Where Fraud is Suspected*
>
> The Social Security Act should be amended to clarify **SSA's authority to reopen** SSI cases where there is reason to believe an application or supporting documents are fraudulent.

Rept. on Reforms at 8 (emphasis added). These passages explain the legislative intent behind 42 U.S.C. § 405(u) and 42 U.S.C. § 1320a-8(l), the statutes under which Defendant re-determined Ms. Griffith's application. Rather than create a new procedure when fraud is suspected, Congress intended to require the SSA to follow reopening procedures. Because Ms. Griffith's complaint sets

5

out facts which show that Defendant failed to follow reopening procedures when it re-determined her application for benefits, the complaint states a claim on which relief may be granted.

### Ms. Griffith Due Process Rights Have Been Violated

The federal government cannot constitutionally deprive a person of the benefits that their family depends on based on a secret document containing allegations of fraud.

As the Supreme Court explained in *Goldberg v. Kelly*, 397 U.S. 254, 270 (1970), before the government can cut off an individual's benefits, certain procedures must be followed to comply with due process. "[W]here governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue." *Id.* (quoting *Greene v. McElroy*, 360 U.S. 496 (1959). This disclosure is important because "due process requires an opportunity to confront and cross-examine adverse witnesses." *Id.*

In Ms. Griffith's case, even at this point, the Defendant still has not disclosed what evidence proves that there is in fact reason to believe that fraud was involved in Ms. Griffith's 2008 award of benefits. Because it has not been disclosed, Ms. Griffith has not had the opportunity to challenge the credibility of this evidence.

In addition, Ms. Griffith has not been given a legal opportunity to challenge the (unsupported) allegations of fraud until now. The Appeals Council's May 18, 2015 notice that began the redetermination process for Ms. Griffith summarily accepted the allegation that "there was reason to believe fraud was involved," and it has been insulated from review in Ms. Griffith's claim until now.

Even though the bottom-line holding of *Mathews v. Elridge*, 424 U.S. 319 (1976), was that Title II Social Security disability claimants do not have a constitutional right to a full evidentiary hearing before termination of benefits, *Matthews* does not stand in the way of Ms. Griffith's procedural argument.

This Court should hold that the Defendant's decision in Ms. Griffith's claim to witsshhold whatever evidence might support the allegations of fraud and to prohibit Ms. Griffith from being able to challenge these allegations violates her due process rights when the process results in the loss of her SSI benefits.

<u>The Redetermination Process Violated the Administrative Procedure Act</u>

In addition to failing to supply a full and complete prior record, the constitutional violation in Ms. Griffith's case is the most straightforward showing of likelihood of success on the merits, out of respect for the practice of constitutional avoidance, Ms. Griffith can also show that she is likely to succeed on statutory challenges to the Defendant's actions in this case.

The Defendant's procedures violated Ms. Griffith's rights under the Administrative Procedure Act ("APA.")

*Ms. Griffith's incomplete Record Lacks Any Finding of Fraud and Ms. Griffith Has Been Deprived of Any Opportunity to Defend her Case by Challenging This Presumed Fact.*

The first statutory violation relates to the Defendant's due process violation. The Defendant's action in relying on extra record allegations of fraud and/or similar fault and refusing to allow Ms.. Griffith to rebut such evidence using methods such as cross examination violates the requirements on formal adjudication at 5 U.S.C. § 556(d)–(e) as well as the Social Security Act's requirements at 42 U.S.C. § 405(b). As a threshold matter, Ms. Griffith's oral redetermination hearing should be considered a required formal adjudication under the APA. *Cf. Califano v. Yamasaki*, 442 U.S. 682, 697 (1979) (holding that SSA must provide oral hearing before determining whether claimant was at fault for overpayment).

5 U.S.C. § 556(d) says, "A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts."

Here, the Defendant has not complied with this provision because Ms.. Griffith has not been allowed to present her defense against the allegations of fraud and has not been allowed to cross examine whomever the sources of the fraud allegations are.

5 U.S.C. § 556(e) provides,

> The transcript of testimony and exhibits, together with all papers and re-

7

> quests filed in the proceeding, constitutes the exclusive record for decision in accordance with section 557 of this title and, on payment of lawfully prescribed costs, shall be made available to the parties. When an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary.[1]

Yet, the basis of the allegations of fraud or similar fault were never a part of the testimony and exhibits in Ms. Griffith's adjudication below. All Ms. Griffith received was the August 15, 2015 notice of the Defendant's subordinates' conclusion that "there was reason to believe fraud was involved." There is nothing in the record to support the Appeals Council's conclusion that there is reason to believe fraud or similar fault ocurred in Ms. Griffith's award. Further, § 556(e) requires Ms.. Griffith have "an opportunity to show the contrary." However, the Defendant has refused to ever provided this opportunity and accordingly violated the APA.

Similarly, the Social Security Act at 42 U.S.C. § 405(b) (1) directs the Defendant "to make findings of fact" and issue a decision "setting forth a discussion of the evidence." And once a claimant uses his "opportunity for a hearing with respect to such decision" then the Defendant must issue a decision "on the basis of evidence adduced at the hearing." The Defendant has not complied with this provision because her adjudicators (1) never made a finding with regard to the reason to believe fraud or similar fault was involved in Ms.. Griffith's claim, (2) failed to discuss the evidence that such a finding would be based on, and (3) failed to adduce any such evidence at Ms.. Griffith's hearing.

The Defendant has failed to respect the basic procedural protections that the APA and the Social Security Act required in Ms..Griffith's hearing. Accordingly, the Defendant's decision in Ms.. Griffth's case is procedurally flawed on a statutory level as well.[2]

---

[1] If there is any other information from SSA that the ALJ's decision rested on, this would violate the APA's prohibition on *ex parte* communication. *See* 5 U.S.C. 557(d)(1).

[2] In addition, anytime the Defendant seeks to reconsider a claimant's ongoing entitlement to benefits by proving that a claimant's disabling impairment did not exist, the finding regarding the question of disability must be made "after opportunity for evidentiary hearing, with regard to the finding" of the Defendant regarding the individual's disability.

8

1.b.ii. *The ALJ's Decision in Ms. Griffith's Redetermination Decision Was Directed by Investigators or Prosecutors Within SSA.*

An additional problem under the APA is the fact that it appears that the Defendant's adjudicators are effectively being directed by investigators or prosecutors within the agency thus compromising the ALJ's impartiality herein.

.5 U.S.C. § 554(d) requires that the adjudicator in a formal hearing not "be responsible to or subject to the supervision or direction of an employee or agent engaged in the performance of investigative or prosecuting functions for an agency."

This provision was violated in Ms. Griffith's case from the outset of her redetermination process. As the Appeals Council's August 25, 2015 order remanding Ms. Griffith's claim to the ALJ provided "*The Social Security's Office of Inspector General* sent your case to us. The Inspector General told us there was a reason to believe fraud was involved in certain cases..." The Appeals Council and the ALJ then treated the Inspector General's conclusion as a proven fact, effectively resulting in the Inspector General effectively directing a portion of the adjudicators' decisions in Mr. Mullins's formal hearing.

The Inspector General performs investigative functions. As the Defendant herself states, "OIG directs, conducts, and supervises a comprehensive program of audits, evaluations, and *investigations* relating to SSA's programs and operations."

The Inspector General's control over the ALJ's determination regarding whether there is in fact reason to believe fraud was involved is embodied in HALLEX, the agency's "Hearings, Appeals and Litigation Law Manual."[3] which is not mentioned but alluded to in the ALJ's 2016

---

42 U.S.C. § 405(b)(2).

[3] As the agency describes, "Through HALLEX, the Deputy Commissioner for Disability Adjudication and Review conveys guiding principles, procedural guidance, and information to Office of Disability Adjudication and Review staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the hearing, Appeals Council, and civil action levels." HALLEX I-1-0-1, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.html (last visited July 7, 2016). HALLEX is not a formal rule that has been subjected to notice-and-comment

9

decision As the recently revised provision at HALLEX I-1-3-25©(4)(a) makes clear, "adjudicators do not have discretion to reconsider the issue of whether the identified evidence should be disregarded when based on an OIG referral of information or a referral based on information obtained during a criminal or other law enforcement investigations."[4]

Accordingly, because the ALJ was effectively "subject to the . . . direction of an employee or agent engaged in the performance of investigative . . . functions for" the agency, the Defendant's subordinates violated 5 U.S.C. § 554(d) in Ms. Griffith's claim.

*Failure to Follow Notice-and-Comment for HALLEX*

To the degree that the Defendant defends its procedures by relying on the agency's "Hearings, Appeals and Litigation Law Manual" (HALLEX) an additional problem under the APA arises. If the agency gives HALLEX the force and effect of law, then it violates 5 U.S.C. § 553's rulemaking procedures. *See Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1203 (2015). (A failure to promulgate rules also violates the Social Security Act because 42 U.S.C. §§ 405(a) and 421(k) says that the Defendant "shall" establish formal rules to govern adjudication.)[5]

### 1.b.iii. *The Redeterminations Violated the Social Security Act's "Immediately" Requirement.*

Assuming the commissioner's incomplete earlier record does not preclude the Commissioner's redetermination march, the Social Security Act provision that allows for the Defendant

---

rulemaking under 5 U.S.C. § 553 OR 42 U.S.C. §§ 405(a) and 421(k)

[4] A remarkable difference in the HALLEX instructions is that if the allegations of fraud originated from someone in SSA who was *not* an investigator, then a claimant like Ms.. Griffith would apparently be given the right to challenge the allegations as due process requires. *See* HALLEX I-1-3-25©(4)(a). However, when the allegation comes from an investigator, the "adjudicators do not have discretion to reconsider" (The use of the word "reconsider" is striking because an adjudicator never considered the allegation in the first place. Apparently, OIG's consideration is imputed to the adjudicator.) To create a dichotomy in how redetermination claims are treated based on the source of the factual allegations is not only arbitrary and capricious, but also unmoored from any law-and thus improper agency action in its own light. *See* U.S.C. § 702(2). But the fact that SSA is giving the conclusions of investigators power over adjudicators more directly violates 5 U.S.C. § 554(d).

[5] As the agency describes, "Through HALLEX, the Deputy Commissioner for Disability Adjudication and Review conveys guiding principles, procedural guidance, and information to Office of Disability Adjudication and Review staff. HALLEX defines procedures for carrying out policy and provides guidance for processing and adjudication claims at the hearing, Appeals Council, and civil action levels." HALLEX I-1-0-1, https://www.ssa.gov/OP_Home/hallex/I-01/I-1-0-1.gtml (last visited July 7, 2016)

to "redetermine" otherwise final awards of benefits sets an important, temporal limit on when the Defendant can do so. In specific, 42 U.S.C. § 405(u)(1)(A) provides that in Title II cases:

> The Commissioner of Social Security shall *immediately* redetermine the entitlement of individuals to monthly insurance benefits under this subchapter if there is reason to believe that fraud or similar fault was involved in the application of the individual for such benefits, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud.

A parallel [6]provision for Title XVI cases appears at 42 U.S.C. § 1383€(7)(A)(i)[7] As the Defendant has recognized in another case arising in this circuit, "Congress has given the Commissioner a *clear, non-discretionary* command to redetermine the entitlement to benefits of any claimant who may have committed fraud or similar fault in obtaining benefits" *Fierro v. Comm'r of Social Security*, No. 1:01-cv-615, 2013 WL 6002207, at (W.D. Mich. Nov. 8, 2013) (quoting Defendant's brief).

Ms. Griffith maintains that the Defendant has not met its burden to show sufficient reason to believe that fraud was involved in her claim, Ms. Griffith argues in the alternative that any such evidence that would support such a finding existed many years before the Defendant initiated Ms. Griffith's redetermination process and thus the Defendant violated the "immediately" requirement.

While the full timeline and supporting facts are better suited to a full merits proceeding, Ms. Griffith provides the following outline of public facts for which judicial notice is appropri-

---

[6] The only difference in the wording is in the first sentence. Section 1383 €(7)(A)(i) says "redetermine the *eligibility of an individual for benefits*" rather than "entitlement of individuals to monthly insurance benefits."

[7] Another statutory provision, 42 U.S.C. § 1320a-8(*l*), provides details about what the SSA's Office of Inspector General must do when it has reason to believe fraud was involved. But this provision does not mean that the Defendant can only act under §§ 405(u)(1)(A), 1383€(7)(A)(i) when the information is channeled through OIG, rather it simply specifies that the OIG must provide identifying information to the Defendant. The role of § 1320a-8(*l*) is to encourage prompt redetermination, not bureaucratic paralysis.

11

ate to show that Ms. Griffith has a sufficient likelihood of success to warrant preliminary relief.

- **Late 2006** – Jennifer Griffith, an SSA employee in the Huntington, WV hearing office (where ALJ Daugherty worked) began reporting to supervisors that ALJ Daugherty was improperly assigning cases to himself and issuing on-the-record decisions that were favorable to the claimant. Ms. Griffith testified that "ALJ Daugherty stopped holding hearings in Prestonsburg on Mr. Conn's cases and began deciding . . . all of his cases on the record favorably. And . . . everyone noticed that."[8] Ms. Griffith was supported in her complaints by a coworker and union representative, Sarah Carver who also complained to supervisors about improper activity between ALJ Daugherty and Eric Conn.[9] In response to these complaints, Ms. Griffith's supervisors retaliated against Ms. Griffith and Ms. Carver.[10] Due to health problems related to the stress of the retaliation, Ms. Griffith resigned in October 2007. At the time of her resignation, she cited the reason for her leaving as the "misconduct of ALJ David Daugherty" by which she was referring to "his misappropriation of the cases and deciding those favorably based on the attorneys assigned them."[11]
- **July 2009** – Ms. Griffith called SSA's Office of Inspector General to report the alleged misconduct involving ALJ Daugherty and Eric Conn.[12]
- **May 19, 2011** – *The Wall Street Journal* publishes an exposé of ALJ Daugherty, focus-

---

[8] Tr. of Evidentiary Hearing 28, *Griffith v. Conn*, No. 11-cv-157 (E.D. Ky. Sept. 8, 2014) (testimony of Jennifer L. Griffith). The SSA consented to Ms. Griffith's testimony and a DOJ attorney was present at the hearing to represent the Government's interest. *Id.* at 10.
[9] *Id.* at 129–31 (testimony of Sarah Carver).
[10] *Id.* at 29 (testimony of Ms. Griffith) (stating that following Ms. Griffith's complaints, her supervisor Ms. Goforth told her that she had a "goal to get rid of me by the end of that year"); *id.* at 132 (testimony of Ms. Carver) ("I started receiving a lot of retaliation from different supervisors.").
[11] *Id.* at 34–35.
[12] *Id.* at 45.

12

ing on his approval of claims involving Eric Conn.[13] The article said, "the Social Security Administration's inspector General's Ooffice launched an investigation into Mr. Daugherty's approval rate" including as a subject a "possible connection between Messrs. Daugherty and Conn." The same day the article was printed, Inspector General agents went to the Huntington, WV Hearing Office and began securing evidence and interviewing witnesses regarding Conn and Daugherty.[14] During the same time frame Chief Huntington SSA Judge Charlie Andrus decided to engage in a criminal conspiracy and try to falsely accuse Sarah Carver of engaging in job related misconduct in an attempt to punish, intimidate, and discredit her for reporting the allegations that led to the allegations that triggered the SSA's actions against the plaintiff and others. Andrus eventually plead guilty to a felony information for this conduct on June 14, 2016 in Federal Court in Lexington.

- **May 2011**- According to his 2016 guilty plea stipulation, beginning immediately after the publication of the Wall Street Journal article, Chief Huntington Judge Charlie Andrus entered into a criminal conspiracy with Eric Conn to retaliate against an SSA employee "for providing truthful information to law enforcement officers". The plea stipulation indicated that the conspiracy involved gathering video evidence, and that the video operation went on from June 2011, until February 2012. In the plea documents Andrus acknowledged that his administrative duties included being the supervisor of "all Huntington Hearing office employees...." Andrus also acknowledged that he was aware of the O.I.G. investigation in early 2011.

- **September 13, 2012** – The Minority Staff of the U.S. Senate Permanent Subcommittee

---

[13] Damian Paletta, "Disability-Claim Judge Has Trouble Saying 'No': Near Perfect Approval Record; Social-Security Program Strained", *The Wall Street Journal* (May 19, 2011), http://www.wsj.com/articles/SB10001424052748704681904576319163605918524.
[14] Plea Agreement, Ex. A, Stipulation of Fact, *United States v. Andrus*, No. 16-cr-56 (E.D. Ky. June 13, 2016).

13

on Investigations issued a report naming ALJ Daugherty as a judge who issued improper decisions relying on attorney-procured medical evidence.[15]

- **October 7, 2013** – The U.S. Senate Committee on Homeland Security and Governmental Affairs held a hearing[16] and issued a report[17] that directly made accusations of fraud regarding attorney Eric Conn and ALJ Daugherty. The report was titled "How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm." As a part of that hearing, Debra Bice, Chief Administrative Law Judge of the SSA, told the Committee that SSA had what she termed "reliable evidence" sufficient to show "similar fault" under 42 U.S.C. § 405(u) of the Social Security Act.[18]

- **July 2, 2014** – SSA's Office of the Inspector General provides the SSA's General Counsel with "information regarding 1,787 individuals" who "were formerly represented by attorney Eric C. Conn, or his firm, and OIG had reason to believe that fraud was involved in their applications for Social Security Benefits." This "referral was with the understanding that SSA was not to take any adverse action against any individual on the list until further notice." (The referral itself is not available to Mr. Mullins, but it is referred to in the May 12, 2015 Memorandum.)

- **May 12, 2015** – SSA's Office of Inspector General says that it is "not aware of any objection to SSA moving forward with its administrative processing of the redeterminations

---

[15] S. Permanent Subcomm. on Investigations, Comm. on Homeland Security and Gov't Affairs, *Social Security Disability Programs: Improving the Quality of Benefit Award Decisions* (2012), *available at* http://www.hsgac.senate.gov/download/?id=C72D8A7D-F773-4E31-A84C-5B877CA11316.

[16] *Social Security Disability Benefits: Did a Group of Judges, Doctors, and Lawyers Abuse Programs for the Country's Most Vulnerable: Hearing Before the Committee on Homeland Security and Governmental Affairs*, 113th Cong. (2013), *available at* https://www.gpo.gov/fdsys/pkg/CHRG-113shrg85499/pdf/CHRG-113shrg85499.pdf.

"How Some Legal, Medical, and Judicial Professionals Abused Social Security Disability Programs for the Country's Most Vulnerable: A Case Study of the Conn Law Firm." *Supra* n.8 at 127

[18] *Supra* n. 18 at 127.

14

of the 1,787 individuals whose name were previously provided by OIG to SSA on July 2, 2014. As such, this notice is to inform SSA that it may proceed with its redetermination of the cases of the individuals on the previously transmitted list." *Id.*

- **May 18, 2015** – SSA's Appeals Council writes to Mr. Mullins to provide him notice that his award is subject to redetermination due to the allegations of fraud. R.13-1, Page ID #95.

As this timeline indicates, nearly nine(9) years have elapsed from when SSA employees first made complaints regarding the alleged fraud that triggered Ms. Griffith's redetermination hearing. There is evidence that at least by July 2009 the complaints reached the desk of the Office of Inspector General. From the period of 2009 to July 2014, there is no evidence that OIG made the referral required by 42 U.S.C. § 1320a-8(*l*) which requires that:

As soon as the Inspector General, Social Security Administration, has reason to believe that fraud was involved in the application of an individual for monthly insurance benefits under title II or for benefits under title VII or XVI, the Inspector General shall make available to the Commissioner of Social Security information identifying the individual, unless a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases, certifies, in writing, that there is a substantial risk that making the information so available in a particular investigation or redetermining the eligibility of the individual for such benefits would jeopardize the criminal prosecution of any person who is a subject of the investigation from which the information is derived.

And when this referral was eventually made in July 2014, SSA still refused to "immediately" begin the redetermination proceedings as required by 42 U.S.C. §§ 405(u)(1)(A), 1383€(7)(A)(i).

15

Moreover, despite SSA's knowledge of the allegations that was independent of that possessed by OIG-e.g., resulting from Ms. Griffith's and Ms. Carver's complaints, congressional inquiry, etc.-SSA still failed to institute timely redetermination proceedings.

The SSA explanation is apparently to maintain they had to wait for the O.I.G report. This is a disingenuous position at best. The O.I.G. was also under a legal mandate to act in a timely manner. Their failure to so is also a clear violation of 42 U.S.C. 1320a–8:

Regardless of whether one views the relevant trigger date as late 2006, July 2009, sometime between 2009 and 2014, or July 2, 2014, at that point in time, SSA and the O.I. G. had an obligation under the Social Security Act to "immediately" initiate redetermination hearings. Even taking the latest date, waiting nearly a year from July 2, 2014 until May 18, 2015 is not acting "immediately."

The only excuse for a failure to act "immediately" under §§ 405(u)(1)(A), 1383(e)(7)(A)(i) is the prosecutorial exception. For this exception to apply, "a United States attorney, or equivalent State prosecutor, with jurisdiction over potential or actual related criminal cases" must "certify], in writing, that there is a substantial risk that such action by the Commissioner of Social Security with regard to beneficiaries in a particular investigation would jeopardize the criminal prosecution of a person involved in a suspected fraud." Neither Ms. Griffith nor her counsel have any knowledge of such a certification. If one exists, it should be the Defendant's burden to produce it. Until one is produced, the exception cannot apply.

The "immediately" requirement sets an important limit that is analogous to a statute of limitations. As the Supreme Court explained in another case involving improper treatment of disability claimants, *Bowen v. New York*, 476 U.S. 467, 481 n.13 (1986), limitations periods promote justice by preventing surprises and the associated problems of unavailable evidence. "The

theory is that even if one has a just claim it is unjust not to put the adversary on notice to defend within the period of limitation and that the right to be free of stale claims in time comes to prevail over the right to prosecute them." *Id.* (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

- The reference in the timeline to the criminal conduct and felony guilty plea of former Chief Judge Charlie Andrus points to a plausible explanation as to the seemingly inexplicable delay in initiating the process, The supplement to the Andrus guilty plea agreement entered on June 14, 2016 in the case of United States v Andrus (U.S. District Lexington, KY) provides not only the basis for now former Judge Andrus felony guilty plea, but also provides an important background information as to why the SSA did not initiate the proceedings in a timely manner. Judge Andrus was no ordinary employee of the SSA. He was the supervisor of "all Huntington Hearing office employees" according to his plea agreement documents.

- At the time he received the information that employee Sarah Carver was attempting to expose the apparent improper relationship between Attorney Conn and the ALJ Daugherty, he entered into a heavy handed attempt to intimidate and frame Sarah Carver in an attempt to silence her and presumably others. Given his prominent position, as the supervisor of "all Huntington Hearing office employees", combined with his outrageous criminal actions to suppress and intimidate at least one lower level employee, this conduct can be logically linked to the delay in question. One need not be a conspiracy theorist to reach the conclusion that his conduct sent a chill through the agency that effectively froze the process, all to the detriment of the plaintiff and others similarly situated. Such conduct is clearly imputable to the SSA, given the supervisory position that

17

Andrus occupied. In other words, his conduct does not provide an excusable reason for delay, but rather an inexcusable reason for the delay. It is unclear to the plaintiff the degree to which the Andrus misconduct infected the SSA bureaucracy. The plaintiffs believe that an evidentiary hearing or discovery would allow the court to have a better understanding of the magnitude of the shocking behavior within the SSA, and can better explain the delay in initiating the proceedings.

The delay has made a difference to Ms. Griffith because as more time passed since 2008, it became increasingly difficult for her to develop evidence that was material to the time period up to July 31, 2008. This also affects Ms. Griffith's ability to mitigate the damages flowing from the Defendant's delay by filing a new claim for benefits.[19] Just as it gets progressively harder to develop evidence relevant to 2008 as more time passes, the same is true to 2010, 2011, 2012, etc.

In conclusion, the Defendant's failure to "immediately" start the redetermination process has wronged Ms. Griffith by upsetting her settled expectations and prejudicing her ability to defend himself or secure replacement benefits.

For the reason stated, the defendants motion to dismiss should be denied

Respectfully submitted,

/s WOLODYMYR CYBRIWSKY, ESQ
214 South Central Avenue
Prestonsburg, Kentucky 41653
(606) 886-8389
*Attorney for Carolyn Griffith*

---

[19] A further problem with mitigation of damages in these cases if the SSA's refusal to allow claimants like Ms. Griffith to argue in their redetermination claims for a later disability onset date supported by the medical evidence. As Ms. Griffith's record shows. The Appeals Council limited "the relevant period" for the redetermination as "the period through July 5, 2007." Instead of allowing Ms. Griffith show the ALJ that regardless of the disagreement about 2007, other evidence shows she became disabled sometime afterwards, SSA has forced Ms. Griffith to file a new claim for benefits and go through the normal, backlogged process for a new claim.

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of August, 2016 the foregoing document was submitted via CM/ECF system, which will send a notice of electronic filing to the following CM/ECF partiipant:

> Hon. Kerry B. Harvey
> U.S. Attorney
> 260 West Vine Street, Suite 300
> Lexington, KY 40507-161

/s WOLODYMYR CYBRIWSKY, ESQ