UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

| | |
|---|---|
| **CAROLYN SUE GRIFFITH,** ) | |
| ) | |
| *Plaintiff*; ) | |
| ) | |
| *v.* ) | No. 7:16-cv-00101-DCR |
| ) | |
| **CAROLYN W. COLVIN, COMMISSIONER** ) | |
| **OF SOCIAL SECURITY,** ) | |
| ) | |
| *Defendant*. ) | |

### REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

In light of both the Commissioner's Response and the Oral Arguments Your Honor held on August 29, 2016, it is clear that the Commissioner appears to be very heavily relying on its argument that the redetermination process provided under 42 U.S.C.§§ 1383 (e)(7) and 1320a-8(1) can proceed without having to comply with the due process, constitutional, and administrative protection objections which the Plaintiff has raised. While there is no extensive social security case law to either limit or direct how this redetermination process works, only the Commissioner's singular interpretation, it believes that it needs not answer to anyone. Plaintiff continues to strongly disagree. The redetermination statues while exhorting the Commissioner to move immediately to combat suspected fraud or similar fault do not allow the Commissioner to scuttle those due process, constitutional, and administrative protection which are accorded every claimant in a civil administrative proceeding.

Aside from whether the Commissioner's redetermination process operates in a parallel administrative universe where common due process, constitutional, and administrative protection are available to claimants or not, Plaintiff again believes that in her case the Commissioner is

precluded from proceeding in the redetermination process here because the Commissioner has failed to preserve a full and complete record/file of the original proceeding which resulted in Administrative Law Judge(ALJ) Daugherty's Fully Favorable Decision of July 31, 2008. The Commissioner has misconstrued my original argument to mean that she did not attach a complete file to her attachments in her Motion to Dismiss and Partial Summary Judgment. Plaintiff acknowledges that her attachments do not constitute the full administrative record, but still asserts that the Commissioner's reconstruction of Ms. Griffith's 2008 record is both incomplete and its less than complete record fatally prejudices Ms. Griffith's claim which, in turn, estops the Commissioner from proceeding with its redetermination claim in Ms. Griffith's case.

Again, the Commissioner has not responded to the fact that no 2008 exhibit list nor even a detailed accounting of what evidence and other records which existed and were considered in the original claims file from which ALJ Daugherty rendered a fully favorable decision in Ms. Griffith's claim in 2008. As Plaintiff was noted earlier and again mentioned at the oral arguments, there are errors or omissions present in the 2015 exhibit list which hint at the incomplete nature of the Commissioner's reconstruction of Plaintiff's file. Again, what evidence ALJ Daugherty considered or was before him when he made the favorable decision of July 31, 2008 is speculative. With a missing Exhibit List, missing or misidentified Exhibits in the new List, what else is missing? Ms. Griffith claims that failure to provide a full and complete original record not only prejudices her ability to prove that the July 31, 2008 favorable decision was supported by substantial evidence but that a less than full and complete prior record fatally compromises any attempt by the Commissioner to go back and make a redetermination eight (8)

2

years later based on a less than complete record. See Island Creek Coal Company v. Holdman, 202 F. 3d 873, 883-884 (6th Cir. 2000). While the Commissioner's redetermination process has generated very limited case law, the federal black lung program, which is also an administrative claims program operated by the federal government has provided some case law in this area, and affirms the due process, constitutional, and administrative protections claimed by the Plaintiff. The Holdman decision should provide this Court with some guidance on this issue. Counsel proffer of consideration of that decision is based not only the Sixth Circuit holding which should have important implications in this case, but also because the well crafted and reasoned underlying administrative decision was authored by one Bernard J. Gilday, with whom Your Honor might be familiar. As the Sixth Circuit noted in Holdman a compromised or incomplete administrative record makes it legally untenable to claim it can revisit or redetermine after the original favorable decision. The Commissioner has yet respond to this issue.

      Second, if the Commissioner's argument is taken at face value that it only had to determine for itself that there was a "reason to believe" fraud or similar fault existed which was not subject to any independent determination or adjudication, and is not subject to review or disclosure, then why did the Commissioner and/or its agent OIG fail to act for five(5) to nine(9) years before acting on its suspicions? Had the Commissioner acted immediately as set forth explicitly in its enabling statute, Ms. Griffith's and almost all of the almost 1,800 claims or alleged fraud or similar fault could have been prevented.. In Ms. Griffith's case, she could have retained another attorney, obtained a copy of the medical evidence that was generated in her original claim, could have supplied other evidence in support of her claim and could have avoided this entire situation. Given the low threshold standard upon which the Commissioner

claims it could act only serves to further highlight the inexplicable delay in the Commissioner's actions, a delay which, ironically, Congress sought to expressly remedy by passing those statutes back in 1994.

Third, from what little that the Commissioner has revealed about this "complex disability fraud scheme" to defraud both the Social Security system and the government largely based on pre-completed assessment forms, it appears to Plaintiff's counsel as a clever Rube Goldbergesque-construction which seeks to impress the public and others who are not fully familiar with the practice of social security administrative adjudications, but which has little relevance to Ms. Griffith's case and, counsel suspects,  in many other claims. While that pre-completed assessment form might be important factor in a contested claim hearing where that form might serve as the basis for hypothetical questions posed to a vocational expert witness in a hearing  determining if a Claimant's limitations might result in the identification or elimination of alternative work, **but all these identified cases were adjudications were all on the record.** There were no vocational experts summonsed nor  needed. The deciding ALJ had almost twenty(20) years of experience in deciding whether a claimant was capable of performing gainful work under the Act or not. Plaintiff's counsel submits that the ALJ  was not posing hypothetical questions to himself based on that assessment form  in making the favorable decision in Ms. Griffith's case. Ms. Griffith's low intelligence is found in Dr. Adkins' testing found in his report, not on the assessment form, her pain disorder is also found in the medical report not in the assessment form, nor is her major depression. Again, while the Commissioner's alleged scheme is clever, it bears no actual relevance to Ms. Griffith's favorable decision of 2008.

The Defendant's Response to Ms. Griffith Motion for Preliminary Injunction is troubling, as a statement of the government's position about what it considers legal. Although the Defendant does not openly aver its position, it succinctly implies that she considers it perfectly legal for the government to:

1. Subject a claimant who her own appointed ALJ previously found to be "disabled" under the Act, can be subjected to a "redetermination" hearing nearly eight(8) years after the initial award of benefits based on secret unreviewable evidence based on allegations made by an agency investigator and an incomplete record of what was included and transpired in the original proceeding in 2008.

2. Exclude the claimant's relevant, expert evidence based on the investigator's allegation and without providing claimant any ability to either challenge the allegation or show that the medical evidence is in fact untainted;

3. Terminate the benefits that the claimant and her family depend on because once this medical evidence is excluded, there is not other evidence to support the previous disability finding;

4. Declare the investigator's allegations unreviewable by any neutral adjudicator.

The Defendant claims that Ms. Griffith has mischaracterized the process by boiling this all down to the fact that Ms. Griffith's benefits have been taken away based on unproven allegations of fraud. The Defendant says that it does not seek to terminate Ms. Griffith's benefits based on suspected fraud, rather it is terminating her benefits because "*after* disregarding Dr. Adkins' evidence, SSA redetermined] that there is insufficient evidence supporting Plaintiff's eligibility."

5

*See* Def.'s Resp. #24, PageID #221

Plaintiff continues to maintains that the government cannot legally initiate any redetermination process without some threshold adjudication that there is in fact a reason to believe fraud was involved in the benefits application. Further, the government also cannot exclude relevant evidence without a neutral decision maker's finding that such evidence is tainted.

These arguments are basic and ingrained in the concept of due process that it is hard to understand how the Defendant can contest their applicability in Ms. Griffith's claim.

Insufficient Proof of Fraud

Ms. Griffith assumes that responsible agency action is involved herein and that there is some document/evidence behind the Defendant's Office of Inspector General's allegations that there is reason to believe fraud exists in cases like Ms. Griffith. However, to this date, the Defendant has still not produced it, or even referred to it.

The closest that the Defendant's Response does is refer to two documents:

1. The U.S. Attorney's Office's April 1, 2016 Indictment against Conn, ALJ Daugherty, and Dr. Adkins.
2. The Defendant's Office of Inspector General's May 12, 2015 Referral Memorandum.

There are three(3) reasons that the Indictment cannot meet the government's burden here. First, the indictment is once again merely the government's allegation. An allegation cannot prove another allegation—evidence needs to be produced. Second, the actual timing proves the insufficiency of the indictment. An April *2016* indictment cannot

6

provide a basis for a process that began at least by May *2015* and resulted in a decision terminating Ms. Griffith's benefits in July 2016. Third, the Indictment fails to connect its allegations with Ms. Griffith. Although the Indictment mentions the initials of some claimants (e.g., ¶ 47 of the Indictment refers to claims by "J.M.J." and "J.R.J."), no reference is ever made to "C.S.G." The omission of any reference to Ms.. Griffith weakens the relevance of the Indictment to Ms. Griffith's redetermination proceeding. There are additional problems with OIG's May 12, 2015 memorandum. Again, the document is at most an allegation. This is acknowledged by the Defendant's own procedural manual(HALLEX): "OIG referrals are merely allegations and do not imply or establish any findings." HALLEX I-1-3-12(A), *available at* https://www.ssa.gov/OP_Home/hallex/I-01/I-1-3-12.html. There is no factual basis in support of the May 2015 Memorandum that could prove a reason to believe that fraud was involved in Ms. Griffith's claim for benefits. The closest that the Memorandum comes is the statement that "Mr. Conn or his firm submitted pre-completed 'template' Residual Function Capacity forms purportedly from [physicians] dated between January 2007 and May 2011, in support of the individuals' applications for benefits." D# 24, PageID #223. Yet, there is no documentary proof of this or even a cited source of this information. Regardless, even if this allegation is true, then this is not *per se* fraud. The 2015 memorandum does not say that the RFC forms were forged, inaccurate, or otherwise intended to be misleading. New Social Security Ruling ("SSR") 16-1p[1] defines

---

[1] Social Security Rulings are published in the Federal Register by the Commissioner of Social Security. They are not formal, "notice and comment" rules but are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1).

7

"fraud" as "when a person, *with the intent to defraud*, either makes or causes to be made, a false statement or misrepresentation of a material fact for use in determining rights under the Social Security Act; or conceals or fails to disclose a material fact for use in determining rights under the Social Security Act." *Titles II and XVI: Fraud and Similar Fault Redeterminations Under Sections 205(U) and 1631(E)(7) of the Social Security Act*, 81 Fed. Reg. 13,436, 13,437 (Mar. 14, 2016). The May 2015 memorandum neither discerns the intent of Mr. Conn or his firm nor that the information on the RFC forms was false or misrepresented. In fact, Dr. Adkins' congressional testimony suggests that his cursory review of those forms seemed to be consistent with his written medical reports. In summary, thus far, the agency has not provided a sufficient factual basis to establish a reason to believe that fraud was involved in Ms.. Griffith's award of benefits.

<u>Agency Shell Game and the Disavowal of Responsibility Defense</u>

Throughout the Defendant's Response, the Commissioner refers to the Defendant's Office of Inspector General ("SSA OIG") implying it is separate from her agency. *See e.g.,* Def.'s Resp. 24, PageID #230 ("[T]he 'reason to believe' fraud was involved in Plaintiff's application was not a decision made by the Commissioner under its statutory authority. . . . [T]he decision . . . is made by SSA OIG."). The Commissioner also says that her Office of Inspector General has "power to determine whether there is 'reason to believe' that a party may be engaged in 'fraudulent' conduct." The Commissioner argues that this determination does "not require any hearing—much less one on the record." *Id.* The implications of those statements are striking. First, the Office of Inspector General is under the aegis of the Commissioner. The Inspector

8

General Act of 1978 says that each inspector general "shall report to and be under the general supervision of the head of the establishment involved." 5 U.S.C. App. § 3(a). Even the Commissioner's own website states, "The Inspector General is under the general supervision of the Commissioner of the Social Security Administration." *About the OIG*, https://oig.ssa.gov/about-oig (visited on Aug. 30, 2016). Accordingly, the Defendant is responsible for all of her subordinates' official actions—including those of the Office of Inspector General. The Commissioner's attempt to shift responsibility to her subordinates is an attempt to limit Ms... Griffith's ability to challenge the agency's actions. Second, the statute does not prescribe or proscribe a process for the Defendant to use to initiate redetermination proceedings. There are two(2) relevant statutory provisions:

42 U.S.C. § 405(u)(1)(A) says, "*The Commissioner of Social Security shall* **immediately** redetermine the entitlement of individuals to monthly insurance benefits under this subchapter *if there is reason to believe that fraud or similar fault was involved* in the application of the individual for such benefits. . . ."

42 U.S.C. § 1320a-8(*l*) says, "*As soon as the Inspector General, Social Security Administration, has reason to believe that fraud was involved* in the application of an individual for monthly insurance benefits under subchapter II of this chapter or for benefits under subchapter VIII or XVI of this chapter, *the Inspector General shall make available to the Commissioner* of Social Security information identifying the individual. .."

As Ms.. Griffith noted in her original memorandum, § 1320a-8(*l*) does not mean that the

9

Commissioner can only act under § 405(u)(1)(A) when the information is channeled through OIG, rather it simply specifies that the OIG must provide identifying information to the Defendant. The role of § 1320a-8(*l*) was to encourage prompt redeterminations, not excuse bureaucratic paralysis.

Next, the Commissioner says "the decision that there is 'reason to believe' that fraud may be involved is made by SSA OIG." Def.'s Resp. 24, PageID #230. This is an incorrect reading of § 405(u). Section 405(u)(1)(A) does not refer to OIG and inserting such a requirement would both improperly rewrite the statute and makes no sense. Imagine that an informant goes directly to the Commissioner with irrefutable information that an individual claimant obtained his/her benefits fraudulently. There is no requirement that the Commissioner delay the redetermination process until OIG has time to investigate. Rather, under § 405(u), once the Commissioner has "reason to believe that fraud or similar fault was involved in the application of the individual for such benefits" then she "shall *immediately* redetermine the entitlement." According to the testimony of Susan Griffith and Sarah Carver, the Commissioner already possessed such evidence sufficient to act in 2006 Channeling all decisions of "reason to believe" through OIG was an excuse not to act, which is contrary to the statute.

The agency's decision whether there is "reason to believe" to justify a redetermination under § 405(u) rests ultimately with the Commissioner. An SSA OIG referral under § 1320a-8(*l*), not a redetermination under § 405(u). Because the decision rests with the Commissioner to initiate a redetermination, it should be subject to challenge by a claimant just like any other assertion by the Commissioner and an adjudicator should

make findings based on the record evidence. *See* 42 U.S.C. § 405(b)(1).

Formal vs. Informal Adjudications

The Defendant argues that the Administrative Procedure Act's requirements for formal hearings do not apply because 42 U.S.C. § 405(u)(1)(A) does not contain the language that triggers a formal hearing. *See* Def.'s Resp. #24, PageID #231.

However, this argument must fail for three(3) reasons.

1. *First*, the Supreme Court held in *Califano v. Yamasaki*, 442 U.S. 682, 696–97 (1979), that to comply with due process the Social Security Act must be interpreted to provide an oral hearing before determining whether a claimant was at fault due to an over payment. An oral hearing and not just a documentary review was required, because "[e]valuating fault, like judging detrimental reliance, usually requires an assessment of the recipient's credibility, and written submissions are a particularly inappropriate way to distinguish a genuine hard luck story from a fabricated tall tale." *Id.* The same is even more true for the question of "fraud or similar fault" under § 405(u)(1)(A) because it not only contains the same word—fault—but also refers to fraud—which requires an inquiry into whether any inaccuracies by the claimant or his representative were accidental or were intentional misrepresentations. For example, Social Security regulations recognize factors relevant to the existence of fraud or fault that can only be determines through an oral hearing: "In determining whether a determination or decision was obtained by fraud or similar fault, we will take into account any physical, mental, educational, or linguistic limitations (including any

11

lack of facility with the English language) which you may have had at the time." 20 C.F.R. § 416.1488©. These requirement track exactly the statutory factors to be considered in overpayments under 42 U.S.C. § 404(b)—i.e., the factors that *Yamasaki* held require an oral hearing even though § 404(b) does not use the word "hearing." Similarly, because the Social Security forms require a declaration that information "is true and correct *to the best of my knowledge*"[2] this requires an inquiry into the claimant's knowledge.

Granted, the Social Security Act does not use the word "hearing" in § 405(u), but neither does § 404(b). As the Supreme Court explained in *Yamasaki*, to avoid constitutional doubt, judges must be "willing to assume a congressional solicitude for fair procedure, absent explicit statutory language to the contrary." 442 U.S. at 693. Section 405(u) does not foreclose a hearing, it is merely silent on the matter. This Court need merely follow *Yamsaki* and interpret the silence to assume fair procedure.

*2.* There is language elsewhere in the Social Security Act that does require a hearing in these situations. 42 U.S.C. § 405(b) reads as follows:

> **(b) Administrative determination of entitlement to benefits; findings of fact; hearings; investigations; evidentiary hearings in reconsideration of disability benefit terminations; subsequent applications**
> (1) The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based. *Upon request by any such individual . . . the Commissioner shall give such applicant . . . reasonable notice and opportunity for a*

---

[2] *See, e.g.,* Form SSA-16-BK, p.5, *available at* https://www.ssa.gov/forms/ssa-16-bk.pdf.

*hearing with respect to such decision, and, if a hearing is held, shall, on the basis of evidence adduced at the hearing, affirm, modify, or reverse the Commissioner's findings of fact and such decision. . . .*
(2) *In any case* where—
    (A) an individual is a recipient of disability insurance benefits, or of child's, widow's, or widower's insurance benefits based on disability,
    (B) *the physical or mental impairment on the basis of which such benefits are payable is found* to have ceased, *not to have existed*, or to no longer be disabling, and
    © as a consequence of the finding described in subparagraph (B), such individual is determined by the Commissioner of Social Security not to be entitled to such benefits,
*any reconsideration* of the finding described in subparagraph (B), in connection with a reconsideration by the Commissioner of Social Security (before any hearing under paragraph (1) on the issue of such entitlement) of the Commissioner's determination described in subparagraph ©, *shall be made only after opportunity for an evidentiary hearing*, with regard to the finding described in subparagraph (B), which is reasonably accessible to such individual.

Accordingly, because the redetermination process involves questions of whether these individuals who are receiving disability insurance benefits had an impairment that actually existed, then §§ 405(b)(1) and (2) require a formal hearing.

3.The Commissioner did provide Ms Griffith with a formal hearing. It cannot argue that doing so is impractical. The Commissioner, however, desires to limit the formal adjudication to the merits of Ms. Griffith's disability, *not* the issue of whether there is reason to believe that fraud existed in this claim. As noted earlier, because the threshold question of fraud affects the admissible medical evidence regarding disability, the two issues cannot be bifurcated. It's like the officer in the duel hypothetical saying that the accused liar can have a duel and can have a gun, just not any ammunition. Accordingly, to respect the constitutional requirements of due process that are embodied in the Administrative Procedure Act(APA), all of the relevant issues must be subject to formal adjudication.

13

<u>The Requirement of a Neutral Adjudicator</u>

As Ms..Griffith noted in her original memorandum, she was deprived of a fair adjudication because the Commissioner's adjudicator was effectively directed by OIG investigators or prosecutors within the agency. The Commissioner responds says that Ms.. Griffith "mischaracterizes the statute," that an OIG referral under section 1129(l) of the Act simply triggers a process—it does not direct an outcome." Again, the Commissioner's response is like saying that when you deprive ammunition from one of the duelists before a duel, that it does not direct an outcome. While logically this is technically true, as a practical and factual matter this is obviously false. That's why Ms. Griffith claims that the Commissioner's adjudicators have "effectively" been directed. The Commissioner's ALJ abrogated his duties to make neutral findings of whether in fact there is a reason to believe that fraud existed.

As the Appeals Council's July 13, 2015 order remanding Ms. Griffith's claim to the ALJ provided, "The Social Security's Office of Inspector General sent your case to us. *The Inspector General told us* there was a reason to believe fraud was involved." The Appeals Council and the ALJ treated the Inspector General's conclusion as a proven fact, effectively resulting in the Inspector General directing a critical portion of the ALJ's decisions in Ms. Griffith's formal hearing.

The requirement of a neutral adjudicator goes beyond the Administrative Procedure Act and is fundamental to due process.

The problem with the Commissioner's rescinded procedures in Ms. Griffith's case which governed here is that the preliminary determination affected the merits. Because the investigators' conclusion resulted in the exclusion of Ms. Griffith's expert evidence, it all but

14

decided the case.

<u>The Commissioner Has Ignored the "Immediately" Requirement</u>

As referenced earlier, the Commissioner ignores the time line that Ms. Griffith provided that shows that from late 2006 to May 2015, the Commissioner and her subordinates had a growing basis for information that arguably could have triggered commencing the redetermination process . Instead, the SSA waited, fatally prejudicing Ms. Griffith's claim.

As promised at the 8/29/2016 hearing, Ms. Griffith has filed a new application for benefits in an effort to mitigate her losses. She again reasserts her earlier arguments as to why this Court should granted her the extraordinary relief of a Preliminary Injunction. More arguments could be provided, but Plaintiff seeks to comply with the Court's page limitations in these filings.

WHEREFORE, Plaintiff requests proper Orders of this Court.

Respectfully submitted,

/s Wolodymyr Cybriwsky, Esq.
214 South Central Avenue
Prestonsburg, Ky 41653
(606) 886-8389
Attorney for Plaintiff

**CERTIFICATE OF SERVICE**

I certify that on September 13, 2016 the foregoing document was submitted via CM/ECF, which will send a notice of electronic filing to Hon. Kerry B. Harvey, counsel for the Commissioner and Hon. Evan B. Smith, co-counsel for the Plaintiff.

/s/ Evan Smith
EVAN B. SMITH